## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Patti Jones, Karin Murry, Kathy Kerssen, Carrie Martinson, Jacki Stene, and Deb Koziolek, | Court File No. 22-cv-1478 JRT/BRT |
| *Plaintiffs*, | **COMPLAINT** |
| *vs* | **JURY TRIAL DEMANDED** |
| The Mayo Clinic; a Minnesota non-profit corporation, and the Mayo Foundation, a Minnesota non-profit corporation, | |
| *Defendants*. | |

Plaintiffs Patti Jones ("Plaintiff Jones"), Karin Murry ("Plaintiff Murry"), Kathy Kerssen ("Plaintiff Kerssen"), Carrie Martinson ("Plaintiff Martinson"), Jacki Stene ("Plaintiff Stene"), and Deb Koziolek ("Plaintiff Koziolek") (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendant The Mayo Clinic ("Defendant Mayo") and Defendant the Mayo Foundation ("Defendant Mayo Foundation").

### INTRODUCTION

1.      In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporation Defendant Mayo Foundation, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of Defendant Mayo's and Defendant Mayo Foundation's employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-

held religious beliefs.  Plaintiffs filed requests for a religious exemption with Defendant Mayo and Defendant Mayo Foundation to be exempt from taking the Covid-19 vaccination.  Defendant Mayo and Defendant Mayo Foundation denied the requested religious exemptions.  In addition, Defendant Mayo and Defendant Mayo Foundation failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendant Mayo and Defendant Mayo Foundation terminated Plaintiffs solely based on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendant Mayo and Defendant Mayo Foundation reversed part of their Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.      Based on Defendant Mayo's and Defendant Mayo Foundation's implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on Defendant Mayo's and Defendant Mayo Foundation's Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

**JURISDICTION AND VENUE**

3.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission

2

("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.       This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.       This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.       This Court has personal jurisdiction over Defendant Mayo Foundation as it is a non-profit corporation operating in and located in the State of Minnesota.

7.       Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

8.       Defendant Mayo Foundation is subject to the provisions of Title VII and the ADA because Defendant Mayo Foundation employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

9.       Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo and Defendant Mayo Foundation conduct business in the State of Minnesota.

## PARTIES

10.     Plaintiff Patti Jones is a Wisconsin resident who worked for Defendant Mayo most recently in the post hospital partnership program.  She worked 100% remotely for most of the last two years of her employment.

11.     Plaintiff Karin Murry is a Rochester, Minnesota resident who is 55 years old and worked for the Defendant Mayo Foundation as a respiratory therapist for over 30 years.  On information and belief, Plaintiff Murry is one of the more highly paid employees at her position.

12.     Plaintiff Kathy Kerssen is a Rochester, Minnesota resident who most recently worked as a certified optician for Defendant Mayo for nearly 20 years.  Plaintiff Kerssen is 53 years old and is one of the more highly paid employees at her position.

13.     Plaintiff Carrie Martinson is a Gilbert, Arizona resident who worked for Defendant Mayo as a nurse practitioner for nearly 20 years when she resided in Minnesota.  She made $62.75 per hour, which made her one of the more highly paid employees for her position.

14.     Plaintiff Jacki Stene is an Albert Lea, Minnesota resident who is 62 years old and worked for Defendant Mayo as an senior IT access management specialist. Plaintiff Stene worked for Defendant Mayo for approximately 35 years and on information and belief was one of the more highly paid employees at her position.

15.     Plaintiff Deb Koziolek is a Minnesota resident who is 60 years old and worked for Defendant Mayo as an LPN for 18 years.  On information and belief, Plaintiff Koziolek was one of the more highly paid employees at her position.

4

16.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

17.     Defendant Mayo Foundation is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

## FACTS

18.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendant Mayo or Defendant Mayo Foundation.

19.     Defendant Mayo and Defendant Mayo Foundation recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

20.     However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate for Defendant Mayo and Defendant Mayo Foundation.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on

5

unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

21.     The Vaccine Mandate was announced on October 13, 2021. Defendant Mayo's and Defendant Mayo Foundation's policy required all staff to become vaccinated against Covid-19, and that if they were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

22.     On October 25, 2021, Defendant Mayo and Defendant Mayo Foundation sent a communication outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on December 3, 2021, Defendant Mayo and Defendant Mayo Foundation issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

23.     Defendant Mayo and Defendant Mayo Foundation announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

24.     However, what Defendant Mayo and Defendant Mayo Foundation gave with one hand, they took away with the other by proclaiming that "*it is anticipated that a small number of staff will have a qualifying religious exemption*."  (emphasis added) Defendants further wrote: "*applications for a religious exemption will be denied if the*

6

panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>, (emphasis added).  Further, Defendant Mayo and Defendant Mayo Foundation declared: "[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>." (emphasis added).

25.     Defendant Mayo and Defendant Mayo Foundation thus put themselves in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

26.     Defendant Mayo and Defendant Mayo Foundation also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted or disregarded.

27.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendant Mayo and Defendant Mayo Foundation wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so <u>please do not share broadly</u>*." (emphasis added).

28.     Consistent with Defendants Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Jones requested a religious exemption which Defendant Mayo denied. Plaintiff Jones requested Defendant Mayo provide her with further information regarding the religious exemption

denial and was told: "We are not able to provide individual feedback regarding your denial reasons." Plaintiff Jones requested reconsideration of Defendant Mayo's initial denial. Defendant Mayo denied the request for reconsideration.

29.     Plaintiff Jones is a Christian and believes her body is a Temple of the Holy Spirit and that she must not defile her body with unwanted intrusions. Taking the vaccine would defile her body that God has given her.

30.      For almost all of her last two years of employment with Defendant Mayo, Plaintiff Jones worked 100% remotely and therefore did not have contact with patients or other employees and therefore posed no danger to Defendant Mayo's employees or patients.

31.     Plaintiff Jones received positive job performance reviews.

32.     Because of her job with Defendant Mayo, Plaintiff Jones was aware of a number of patients suffering illnesses shortly after receiving the Covid-19 vaccine.

33.     Plaintiff Murry requested a religious exemption which Defendant Mayo Foundation denied. Plaintiff Murry requested reconsideration of Defendant Mayo Foundation's initial denial. Defendant Mayo Foundation denied the request for reconsideration.

34.     Plaintiff Murry also sought information as to the basis for the rejection of her religious exemption but Defendant Mayo Foundation provided no reasoning or explanation.

35.     Plaintiff Murry is a Christian and believes that her body is a Temple and she has the right, through prayer, to determine what to put into her body. She has

8

determined she cannot, consistent with her conscience and religious beliefs, take the vaccine.

36.    Plaintiff Murry was at the high end of the pay scale for her job and had worked for Defendant Mayo for over 30 years.

37.    Plaintiff Murry has received positive job performance reviews including that "Karin is an amazing team member. She is a joy to work with and always offers help to coworkers."

38.    Plaintiff Murry has observed that the Vaccine Mandate and religious exemption process were used to prematurely end the employment of older workers and higher paid workers.

39.    Plaintiff Murry has observed numerous healthy individuals suffering illnesses shortly after receiving the vaccine.

40.    Consistent with Defendants Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Kerssen requested a religious exemption which Defendant Mayo denied. Plaintiff Kerssen requested reconsideration of Defendant Mayo's initial denial.  Defendant Mayo denied the request for reconsideration.  Plaintiff Kerssen received many positive employment reviews for her job performance.

41.    Plaintiff Kerssen has had Covid-19 and recovered which means she has natural immunity.

42.    Plaintiff Kerssen has observed numerous healthy individuals suffering illnesses shortly after receiving the vaccine.

43.     Plaintiff Kerssen is a Christian, and has determined that she cannot, consistent with her religion and conscience, take the COVID-19 vaccine. She is a believer in Jesus Christ, Lord and Savior, believes the tenants of the Holy Scripture that whatever she does in life will be called into account, including what she does to her body, made in the image of God, and to do otherwise is a sin against God. She also objects to taking the Covid-19 vaccine on the basis that it was produced with, or tested with cells from aborted human babies. This violates her religious belief in the Commandment that Thou Shall Not Kill.

44.     Consistent with Defendants Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Martinson requested a religious exemption which Defendant Mayo denied. Plaintiff Martinson requested reconsideration of Defendant Mayo's initial denial.  Defendant Mayo denied the request for reconsideration.

45.     Plaintiff Martinson is a Christian and has determined she cannot, consistent with her conscience, take the COVID-19 vaccine. She is a believer in Jesus Christ, Lord and Savior, believes the tenants of the Holy Scripture that whatever she does in life will be called into account, including what she does to her body, made in the image of God, and to do otherwise is a sin against God. She also believes that abortion is murder and a sin, and since the vaccines were produced with, or tested with, cells from aborted human babies, it would be sinful to take the Covid-19 vaccine.

46.     Plaintiff Martinson also requested a medical exemption because she had COVID-19, recovered, and has antibody immunity confirmed by test in December 2021. Martinson also has had a number of health issues causing her to miss periods of work.

47.     Plaintiff Martinson also filed a request for a medical exemption with Defendant Mayo because health providers advised Plaintiff Martinson to delay Covid-19 vaccination due to severe inflammatory disorders. Defendant Mayo also denied Plaintiff Martinson's request for a medical exemption.

48.     Plaintiff Martinson has received numerous positive job reviews including that she "is a great resource for everyone! She is knowledgeable of her job and is always willing to help out…"

49.     Consistent with Defendants Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Stene requested a religious exemption which Defendant Mayo denied. Plaintiff Stene requested reconsideration of Defendant Mayo's initial denial.  Defendant Mayo denied the request for reconsideration.

50.     Plaintiff Stene has been tested for anti-bodies which demonstrated that she has anti bodies present to provide immunity to Covid-19.

51.     Plaintiff Stene received numerous positive job performance reviews.

52.     Plaintiff Stene worked 100% remotely with Defendant Mayo after March 2020.  As such, she was able to perform her duties and pose no threat whatsoever to Defendant Mayo's employees or patients.

11

53.    Consistent with Defendants Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Koziolek requested a religious exemption which Defendant Mayo denied. Plaintiff Koziolek requested reconsideration of Defendant Mayo's initial denial.  Defendant Mayo denied the request for reconsideration.

54.    Plaintiff Koziolek is a Christian and believes that during prayer God revealed it would be wrong for her to be vaccinated against Covid-19.

55.    Plaintiff Koziolek received numerous positive job performance reviews.

56.    Plaintiff Koziolek, who is 60 years old, is aware of younger workers whose religious exemptions were granted.  Plaintiff Koziolek was at the higher end of the pay scale.  Upon information and belief, Defendant Mayo denied the religious exemptions of older, higher compensated workers, and then terminated them.

57.    Plaintiff Koziolek is aware of several people who suffered injuries or illnesses shortly after receiving the Covid-19 vaccine, and is aware of one person who died shortly after receiving the Covid-19 vaccine.

58.    After Defendant Mayo or Defendant Mayo Foundation told Plaintiffs that Defendant Mayo and Defendant Mayo Foundation had denied their requests for religious exemptions and requests for reconsideration, Defendant Mayo and Defendant Mayo Foundation also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification*."

59.     Defendant Mayo terminated Plaintiff Jones' employment on January 3, 2022. Plaintiff Jones filed a discrimination charge with the EEOC and the EEOC issued Plaintiff Jones a Right to Sue letter dated March 3, 2022.

60.     Defendant Mayo Foundation terminated Plaintiff Murry's employment on January 3, 2022.  Plaintiff Murry filed a discrimination charge with the EEOC and the EEOC issued Plaintiff Murry a Right to Sue letter dated March 3, 2022

61.     Defendant Mayo terminated Plaintiff Kerssen on January 3, 2022.  Plaintiff Kerssen filed a discrimination charge against Defendant Mayo, and the EEOC issued Plaintiff Kerssen a Right to Sue letter March 7, 2022.

62.     Defendant Mayo terminated Plaintiff Martinson on January 3, 2022. Plaintiff Martinson filed a charge for discrimination with the EEOC and the EEOC issued Plaintiff Martinson a Right to Sue letter dated March 7, 2022.

63.     Defendant Mayo terminated Plaintiff Stene on January 3, 2022.  Plaintiff Stene filed with the EEOC a charge of discrimination against Defendant Mayo.  The EEOC issued Plaintiff Stene a Right to Sue letter dated March 7, 2022.

64.     Defendant Mayo terminated Plaintiff Koziolek on January 3, 2022. Plaintiff Koziolek filed a claim of discrimination with the EEOC and on March 8, 2022 the EEOC issued Plaintiff Koziolek a Right to Sue letter.

65.     Defendant Mayo and Defendant Mayo Foundation created an ad hoc panel to review exemption requests for taking the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an exemption, but Defendant Mayo or Defendant Mayo Foundation denied nearly every request for religious exemption, with the exception

that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

66.     As a result of Defendant Mayo's and Defendant Mayo Foundation's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendant Mayo and Defendant Mayo Foundation terminated as a result.

67.     In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendant Mayo and Defendant Mayo Foundation sent the such employees, including Plaintiffs, the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

68.     Defendant Mayo and Defendant Mayo Foundation conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendant Mayo's and Defendant Mayo Foundation's processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendant Mayo wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in

14

the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation, Defendant Mayo and Defendant Mayo Foundation sent its employees more boilerplate language to justify its pre-determined result:

> "*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine*."

69.     Defendant Mayo and Defendant Mayo Foundation actually specifically disavowed an individual interactive process by writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

70.     Each of the Plaintiffs sought further clarification on Defendant Mayo's and Defendant Mayo Foundation's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendant Mayo and Defendant Mayo Foundation determining that each of the Plaintiffs did not have a "sincerely held religious belief."  However, Defendant Mayo and Defendant Mayo Foundation refused to respond to these individual requests for clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendant Mayo's letters.

71.     In their form denial letters, Defendant Mayo and Defendant Mayo Foundation announced that they would accept appeals of their uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a*

*reconsideration request here*." Each of the Plaintiffs took advantage of that process and submitted additional information to Defendant Mayo or Defendant Mayo Foundation.

72.    Following each of the Plaintiffs' requests for reconsideration of their requests for a religious exemption to taking the Covid-19 vaccine, Defendant Mayo and Defendant Mayo Foundation again issued identical denial letters to each of the Plaintiffs and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine.  Defendants' transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation*."  Again, Defendant Mayo and Defendant Mayo Foundation engaged in no interactive process to evaluate the requests for religious exemptions.

73.    Defendant Mayo and Defendant Mayo Foundation did not provide information to its employees, including each of the Plaintiffs, about how Defendant Mayo and Defendant Mayo Foundation determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

74.    Both Defendant Mayo's and Defendant Mayo Foundation's original denial of each of the Plaintiffs' requests for a religious exemption and Defendant Mayo's and Defendant Mayo Foundation's denial of each of the Plaintiffs' requests for reconsideration of the denial of their requests for a religious exemption to taking the Covid-19 vaccine contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

75.     Defendant Mayo and Defendant Mayo Foundation further instructed its employees to *"endorse the vaccine or say nothing."*

76.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendant Mayo's and Defendant Mayo Foundation's *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendant Mayo and Defendant Mayo Foundation made no effort to accommodate their requests for a religious exemption. Further, Defendant Mayo and Defendant Mayo Foundation never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

77.     Defendant Mayo and Defendant Mayo Foundation, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

78.     Defendant Mayo and Defendant Mayo Foundation mandated its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.

79.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

80.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

81.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant Mayo and Defendant Mayo Foundation have done as set forth above.

82.     Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

83.     Rather than disclosing the results of its determination on the numbers of Defendant Mayo "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant Mayo has not made public this information and instead simply issued its Vaccine Mandate.

84.     On March 8, 2022, Defendant Mayo announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendant Mayo's remaining unvaccinated employees are now treated similarly to vaccinated employees.

85.     After terminating each of the Plaintiffs, Defendant Mayo and Defendant Mayo Foundation suspended weekly testing effective March 14, 2022.  This means that those employees (like Plaintiffs) who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo and Defendant Mayo Foundation has now determined is unnecessary.

**FIRST CAUSE OF ACTION**

**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

86.     Plaintiffs restate and reallege paragraphs 1 through 85 as if fully set-forth herein.

87.     Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

88.     Defendant Mayo Foundation is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

89.     Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

90.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

91.     Plaintiffs informed Defendant Mayo and/or Defendant Mayo Foundation of the conflict between their religious beliefs and the Vaccine Mandate.

19

92.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

93.     The law prohibits Defendant Mayo and Defendant Mayo Foundation from scrutinizing what they believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant Mayo and Defendant Mayo Foundation believe the exercise of those religious beliefs should be.

94.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

95.     In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendant Mayo, Defendant Mayo Foundation and their ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

96.     Despite the Plaintiffs' consistent requests for Defendant Mayo and Defendant Mayo Foundation to engage in an interactive process regarding their requests for accommodation, Defendant Mayo and Defendant Mayo Foundation refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests

for an exemption for identical reasons as other Defendant Mayo and Defendant Mayo

Foundation employees using an identical form letter.

97.     As set forth above, Defendant Mayo and Defendant Mayo Foundation

could have accommodated Plaintiffs' requests for a religious exemption without suffering

any undue hardship by having them continue to do their job the same as they had done

for the last one and one-half years of their employment.

98.     Defendant Mayo's and Defendant Mayo Foundation's actions constitute

discrimination on the basis of religion and failure to accommodate, all in violation of 42

U.S.C. §§ 2000(e)-2 and 2000(e)(j).

99.     Because of Defendant Mayo's and Defendant Mayo Foundation's unlawful

actions, Plaintiffs suffered and continue to suffer economic and other damages in

amounts to be proven at trial, including front pay, back pay, emotional distress damages,

compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA 363A.08

### Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek

100.     Plaintiffs restate and reallege paragraphs 1 through 99 as if fully set-forth

herein.

101.     Minn. Stat. Sec. 363A.01, et seq. prohibits discrimination in employment

based on religion.

102.     Defendant Mayo and Defendant Mayo Foundation are "employers" within

the meaning of Minn. Stat. 363A.01.

103.    Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek are "employees" within the meaning of Minn. Stat. 363A.01.

104.    Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

105.    Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek informed Defendant Mayo and Defendant Mayo Foundation of the conflict between their religious beliefs and the Vaccine Mandate.

106.    Minn. Stat. 363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

107.    Minn. Stat. 363A.01 et seq. prohibits Defendant Mayo and Defendant Mayo Foundation from scrutinizing what it believes to be the sincerity of Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek's religious beliefs, or whether Plaintiff Murry, Kerssen, Martinson, Stene, and Koziolek's exercise of their beliefs is logical or as consistent as Defendant Mayo or Defendant Mayo Foundation believes the exercise of those religious beliefs should be.

108.    In response to the Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek's requests for reasonable accommodation of their sincerely-held religious beliefs, Defendant Mayo and Defendant Mayo Foundation' ad hoc panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

109.    Despite Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek's requests for Defendant Mayo and Defendant Mayo Foundation to engage in dialogue, Defendants refused throughout to engage in the interactive process, and instead rejected Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek's requests for generalized reasons, using identical form letters.

110.    Defendant Mayo's and Defendant Mayo Foundation's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

111.    Because of Defendant Mayo's and Defendant Mayo Foundation's unlawful actions, Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

112.    Plaintiffs restate and reallege paragraphs 1 through 111 as if fully set-forth herein.

113.    Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

114.    Defendant Mayo Foundation is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

115.    Plaintiffs are "employees" within the meaning of 42 U.S.C. § 12111(4).

116.    The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

117.    Defendant Mayo's and Defendant Mayo Foundation's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a).

118.    As a result of Defendant Mayo's and Defendant Mayo Foundation's wrongful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute

### Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek

119.    Plaintiffs restate and reallege paragraphs 1 through 118 as if fully set-forth herein.

120.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination, vaccination, participation in experimental procedures and protocols, …".  Further, "before performing … vaccination of an individual … a health care provider shall notify the individual of the right to refuse the … vaccination, …."

121.   Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek are "individuals" who have a "fundamental right" to "refuse medical treatment and "vaccines."

122.   Defendant Mayo and Defendant Mayo Foundation are "private entities" and "health care providers" who are obligated to "notify the individual of the right to refuse vaccinations."

123.   The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

124.   Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek have objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek's refusal to accede to Defendant Mayo's and Defendant Mayo Foundation's imposition of such illegal conditions, Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

125.   Defendant Mayo's and Defendant Mayo Foundation's actions in punishing the Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge.

Defendant Mayo and Defendant Mayo Foundation admitted in 2021 that Covid-19 vaccinations could not be mandatory and must instead be voluntary.  Defendant Mayo and Defendant Mayo Foundation changed their policy in October 2021. Subsequently, in March, 2022, Defendant Mayo and Defendant Mayo Foundation changed their policy again to no longer require weekly testing for unvaccinated employees.

126.    As a result of Defendant Mayo's and Defendant Mayo Foundation's illegal actions taken against Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek, Plaintiffs Murry, Kerssen, Martinson, Stene, and Koziolek have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

127.    Plaintiffs restate and reallege paragraphs 1 through 126 above as if fully set-forth herein.

128.    Defendant Mayo and Defendant Mayo Foundation had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

129.    Defendant Mayo and Defendant Mayo Foundation wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual

26

orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

130.     Defendant Mayo's and Defendant Mayo Foundation's policies and statements created a contract between it and its employees.

131.     Defendant Mayo's and Defendant Mayo Foundation's actions in terminating Plaintiffs, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

132.     Plaintiffs have been damaged by Defendant Mayo's and Defendant Mayo Foundation's breach of contract.

133.     In the alternative, Defendant Mayo's and Defendant Mayo Foundation's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendant Mayo's and Defendant Mayo Foundation's promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendant Mayo and Defendant Mayo Foundation for an Order of the Court as follows:

1.     Adjudging that Defendant Mayo and Defendant Mayo Foundation are liable to each of the Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.     Enjoining Defendant Mayo and Defendant Mayo Foundation from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering Defendant Mayo and Defendant Mayo Foundation to take action to restore each of the Plaintiffs to their positions they would have enjoyed absent Defendant Mayo's and Defendant Mayo Foundation's illegal conduct;

3.     Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.     Awarding such other relief as the Court may deem just and equitable.

Dated: June 1, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*